LAW OFFICES OF

# ALLAN P. HABER, ESQ.

111 Broadway, Suite 701
New York, New York 10006

OF COUNSEL
STEPHANIE CARVLIN, ESQ.
GEORGES G. LEDERMAN, ESQ.

TELEPHONE: 212-233-4411
FACSIMILE:   212-374-1506
E-MAIL: allan@haberesq.com

January 31, 2013

Honorable Kenneth M. Karas
U.S. District Judge
U.S. Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Re: <u>United States v. Stanley Bruce, et al.</u>,
    11 Cr. 630(KMK)

Dear Judge Karas:

Stanley Bruce, the defendant in the above-captioned case, is scheduled to be sentenced by this Court on February 15, 2013. I write to provide Your Honor with information that is relevant to your sentencing decision.

## BACKGROUND

On August 9, 2011, Stanley Bruce was arrested and arraigned, in relation to the above indictment for conspiring to distribute and possess with the intent to distribute 280 grams or more of crack cocaine in violation of 21 U.S.C. §841(b)(1)(A), and possessing, aiding and abetting the use or carrying of a firearm which was discharged in violation of 18 U.S.C. 924(c). He has remained incarcerated since his arrest.

On August 24, 2012 Stanley Bruce pled guilty to Counts One and Two of the indictment in accordance with a plea agreement, which stipulates for Count One a

Guidelines, base offense level of 32 minus 3 points for acceptance of responsibility for an adjusted offense level of 29 and for Count Two a consecutive sentence of 84 months for brandishing a weapon during a narcotic conspiracy for a total minimum guidelines sentence of 192 months imprisonment. The agreement also stipulates a 6 criminal history points placing Mr. Bruce in Criminal History Category III. [1]

The "PSI" summarizes the life of Stanley Bruce, a 24-year-old man that never had a chance for a normal life.  His last memory of his father was when he was 6 years old. ("PSI" ¶104)  His mother is, and has been for as long as he can remember, a crack addict. ('PSI" ¶105) He has never served a long prison sentence.  The most time he ever served before getting out of jail was a one-year sentence for the sale of a controlled substance. (PSI ¶86)

The only controversy to be resolved in this matter is determining fairness in the application of his prior criminal history, i.e., determining what is relevant conduct to the instant offense?  Clearly, the information available to the government and counsel at the time they entered into the plea agreement was inadequate.  The harmful results could be substantial.  In the agreement the government and counsel settled on 6 points. In the first draft of the Probation Report, they calculated 13 points. (PSI ¶103)  After an exchange between counsel and the government the number was modified to include additional relevant conduct, which was overlooked by the parties.  This modification resulted in a new calculation by Probation of 11 points.  Mr. Bruce will argue that 3 additional points, for marijuana violations, should also be removed from the calculation because the crimes were committed in Yonkers and were committed with other

---

[1] Probation has calculated a much higher criminal history category

individuals who were either members or associates of the Elm Street Wolves. Mr. Bruce will also request that the Court split the criminal history points (4) related to his arrest when he was 15 years old because a 4 point increase would over represent his criminal history. This result would restore the levels negotiated and agreed to by the government and Mr. Bruce and are supported by both the facts and circumstances related to the crimes.

## THE PROBATION REPORT

Counsel did, not receive the final draft of the Probation Report with its recommendation so any references to the PSI will be limited to the first draft and not the final version of the report.

## THE §3553(a) FACTORS

Following the United States Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005); *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007)(District Court may impose a sentence that varies from the Guidelines based entirely on the Court's view that the Guidelines range doesn't properly reflect the §3553(a) factors); *Gall v. United* States, 552 U.S. 38, 128 S.Ct. 586 (2007)("extraordinary circumstances" not required to impose non-guideline sentence); *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007)(while appellate court may apply presumption that guideline sentence imposed by district court was reasonable, "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines should apply."), and the Second Circuit's interpretation of *Booker* in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), this Court's sentencing decision must be governed by the factors listed in 18 U.S.C. §3553(a). Those factors include the nature

and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the Guidelines range and any applicable Guidelines Policy Statements, the need to avoid sentencing disparities and the need to provide restitution to the victim.

This Court must consider all of the §3553(a) factors to derive a sentence that is "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment. *See United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006) (analyzing the "parsimony clause" of 18 U.S.C. §3553(a)).

1. **The Guidelines Range and Policy Statements**

While this Court is no longer bound to impose a Guidelines sentence, the Second Circuit has directed District Courts to "consider" the Guidelines, and in "order to fulfill this statutory duty to 'consider' the Guidelines, a sentencing judge will normally have to determine the applicable Guidelines range." *Crosby*, 397 F.3d at 111. Thus, one step in deciding what sentence is appropriate for Mr. Bruce is to calculate the Guideline range for his offense. However, there is no presumption that the Guidelines provide the "correct" sentence, and this Court may vary from the Guidelines based entirely on the Court's view that the Guidelines range doesn't properly reflect the §3553(a) factors. *See Kimbrough v. United States,* 128 S. Ct. at 575 (2007).

2. **Probation's Criminal History Calculation**

In the PSI, adjusting for communications between the government and defense

counsel we believe the final report will conclude that Stanley Bruce is responsible for 11 Criminal History Points.  We contest this calculation for reasons set forth below. Probation properly calculated the guidelines range at 32 for Court One, 21 U.S.C. 841(b)(1)(B), conspiracy to violate the narcotic laws, and properly assigned a three point reduction for acceptance of responsibility for a total adjusted offense level or 29. We also concur with Probation that Mr. Bruce must be sentenced to at least 84 months imprisonment on Count Two for brandishing a weapon in violation of 18 U.S.C. 924(c) and that the sentence must run consecutive to whatever sentence the Court imposes on Count One.

3. **Stanley Bruce Criminal History Calculation**

There are 2 marijuana convictions that increase Mr. Bruce's criminal history points by 3 levels. (PSI ¶¶74, 76)  We believe this is in error because both offenses are relevant conduct to the offense conduct of this indictment.  Both offenses occurred in Yonkers within the indicted time frame of the conspiracy and we believe that both offenses involved other members of the Elm Street Wolves.  Although the indictment doesn't specifically charge any of its members with a marijuana offense we believe that the government has knowledge that this group of individuals also sold marijuana from time to time and chose not to charge marijuana violations in their charging instrument. As a consequence we believe these 3 points should be removed from Mr. Bruce's Criminal History Category.  If the Court agrees with this conclusion his criminal history points would be reduced to 8, which would place him in Criminal History Category IV.

Mr. Bruce further argues that the Court should consider - based on the totality of circumstances surrounding his total lack of supervision, education, and opportunity

when he was 15 years - adjusting his sentence based on the 3553(a) factors and sentence him to a non-guidelines sentence that considers his age and life opportunities at the time of the offense. (PSI ¶85)

4.     **The Nature and Circumstances of the Offense**

Mr. Bruce has been convicted of serious charges and as a consequence cannot receive a sentence lower than 5 years on Count One and 7 years on Count Two for a total of 12 years imprisonment. The offense arose from street sales of small amounts of crack cocaine over an extended period of time. Any sentence higher than 12 years would be unfair and excessive for several reasons: 1) Disparity of sentences and 2) because we believe his criminal history category is substantially overstated. For example the robbery that he was convicted of in 2005 occurred when he was 15 years old. Because he received a split-sentence (6 months in jail followed by 5 years probation) he received 2 points for the crime and an additional 2 points for committing the instant offense while on probation for another offense. Although the calculations are legally correct - he was only 15 when he committed the crime - common sense tells us that a 15 year old with little or no education, no home or family able to protect him and/or provide him with some structure in his life should under some circumstances be held to a different standard. The Court should consider that Stanley Bruce will be 24 years old at the time of his sentencing and although he has many convictions - mostly misdemeanors – he has never served a substantial sentence before. Twelve years - half his lifetime - is a substantial sentence for someone his age. If the Court were to give him the minimum Guidelines sentence agreed to in his plea agreement he would serve an additional 4 years imprisonment. This additional time serves no rational

purpose and could, in the long run, be more counter-productive than productive. Any rehabilitation, educational or medical needs can be adequately addressed with a 12-year sentence.

5. **Unwarranted Sentence Disparities**

Debate has existed in this Circuit (and others) over whether the reference to disparity in sentences in 18 U.S.C. §3553(a) means disparity within a case (between defendants in the same cases) or disparity between the defendant to be sentenced and all defendants who have been convicted of the same offense under similar circumstances. The Second Circuit now appears to have condoned a District Court's considering disparity among co-defendants in determining what constitutes a reasonable sentence. *United States v. Willis*, 476 F.3d 103, 110 (2d Cir. 2007)(District Court may consider disparities among co-defendants when imposing sentence); *United States v. Fernandez*, 443 F.3d 19, 32 n.9 (2d Cir. 2006)(plain language of §3553(a)(6) seems not to prohibit judges from considering disparities among co-defendants). In either case, however, the disparity to be avoided is "unwarranted" disparity.

Thirty-four co-defendants where charged in this group of defendants but I believe there were more co-defendants divided up into another group who appeared before Judge Seibel. The PSI reveals that of the 34 co-defendants approximately 13 pled to similar charges. To date none of them have been sentenced although several are scheduled to be sentenced the first week of February. As a consequence it is impossible to determine what sentence they will ultimately receive so it is difficult if not impossible to make the disparity argument. I suspect that many of them will be similarly situated in family history, education and criminal history. I can only ask the Court to

consider where they came from, what opportunities were available to them and what neglect and abuse they were exposed to during their young lives. This is not an attempt to excuse conduct but to better understand what motivated them, how to treat them while they are incarcerated, and can also can be used as aid in determining how much punishment would be fair given their life opportunities.

6. **Criminal History Category**

Mr. Bruce also asks that this Court award a horizontal – or criminal history category – departure based on the 3553(a) factors. The United States Sentencing Commission has explicitly recognized that the point system the guidelines mandate for determining criminal history categories may generate results that are not appropriate. A rigid application of the guidelines' formula may create situations "where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. §4A1.3. Where such anomalies arise, a so-called horizontal departure to a lower criminal history category may be given. *United States v. Rivers*, 50 F.3d 1126, 1131 (2d Cir. 1995). The unusual individual facts and circumstances of Mr. Bruce's case warrant such a departure.

The United States Sentencing "Commission has explained that the escalating sentence ranges prescribed by the CHCs are intended to achieve the purpose of deterrence, see U.S.S.G. Ch. 4, Pt. A, intro. comment." *United States v. Mishoe*, 241F.3d 214, 220 (2d Cir. 2001). Consistent with this goal, category's IV and V are structured to apply to defendants with very extensive criminal histories. Criminal History Category IV encompasses defendants who have seven, eight or nine points while

Criminal History Category V encompasses defendants who have 10,11 or 12 points. Thus, a defendant with two prior felony convictions who was on parole at the time of his new offense would be in Criminal History Category IV if he received sentences in excess of one year and one month for either of the prior convictions. U.S.S.G. §4A1.1(a). The sentencing ranges in category IV and V are concomitantly harsh. For example the minimum guidelines punishment permitted for a defendant in Criminal History Category I at offense level 29 is 87-month imprisonment while the minimum punishment under Criminal History Category III is 108 months; Criminal History IV is 121 months and Criminal History Category V is 140 months. The increase in punishment between levels III, IV and V is dramatic.

Unfortunately when the plea agreement was drafted both the government and the defendant were under the impression that Mr. Bruce would be held responsible for approximately 6 criminal history points. We were not aware of the juvenile offense, which added an additional 4 points to his Criminal History Category. As mentioned previously Stanley Bruce was 15 years old when he was convicted of a robbery that now adds an additional 4 points to his Guidelines level. Although I understand that the state of the law holds that 15 years olds are as responsible as adults for certain criminal acts I don't believe that given the totality of circumstances in this case that this 15 year old is as culpable as an adult. Furthermore, where a defendant served little or no time for prior offenses, a subsequent sentence does not need to be draconian to achieve the desired deterrent effect. *Mishoe*, 241 F.3d at 220.

Under these highly unusual circumstances, Mr. Bruce's criminal history category, as outlined in the PSI significantly over-represents his criminal history. It is respectfully

submitted that the individualized circumstances here all weigh in favor of the Court departing to Criminal History Category III as outlined in the plea agreement.

7. **Mr. Bruce's History and Characteristics**

   a. **Mr. Bruce's Background**

As the PSR indicates, Mr. Bruce grew up in a zero parent supervision setting and took to the streets at a relatively young age.  His street friends became his family.  As a result he either blended in or suffered the consequences, not a concept imaginable to our greater society.  Any child in his circumstance would have reacted in the same way.  Society's shortcomings always come back to haunt us.

   b. **Mr. Bruce's Reputation in the Community**

Attached as **Exhibit A** are a number of family letters.  The one common theme is Stanley Bruce's commitment to family.  Everyone characterizes him to be a good father.  His common-law wife's sister, Tyree Dunnican, admits he has made mistakes but believes he has become a better person since getting involved with his current girlfriend, and baby mother.  Tracy Bruce his mother correctly blames herself for his situation because she was on drugs and was not there for him when he was growing up.  His sister Danielle writes about her parents being on drugs and how the responsibility to look after him became her responsibility.  She calls him a smart person that made a wrong turn.  Antwan Dunnican calls him a good person who has learned his lesson.  Cory Hancock calls Stanley a good person who made some mistakes.  His sister-in-law Elizabeth Bailey calls him a good-hearted person and a family oriented person.  His common-law wife Leanna Dunnican writes about how Stanley would help her kids do homework and watch the kids when she had to go to work.  She also

reminds us of the price he will pay for not being able to be a father to his now 4-year-old son while he is in jail.  Ms. Dunnican's 13 year old child writes to tell us how Stanley would take care of him, helping with his studies, playing football with him and taking care of his mom.  His niece Janaysia Jacobs calls him her favorite uncle, a good father and a person who has helped her with her homework.

8. **Impact of The Defendant's Age on Recidivism**

The defendant is currently 24 years old and he is facing at least the next decade and possibly more in prison. If the court were to impose a sentence of 144 months he would be approximately 34 years old by the time he is released from confinement, much older and therefore much less likely to commit another crime in the future. (See **National Institute of Justice Study on Recidivism**) His age at the time of sentencing and at the time of his projected release are factors indicating that it is unlikely he will commit additional crimes in the future. After *Booker,* many courts have considered a defendant's age as a factor for sentencing below the guidelines. See, *Simon v. United States* 361 F. Supp.2d 35, 48 (E.D.NY March 17, 20005); *United States v. Thomas,* 360 F. Supp. 2d 238, 243 (D. Mass. 2005); *United States v. Nellum,* 2005 U.S. Dist. Lexis 168 (N.D. Ind. February 3, 2005). According to the Sentencing Commission, for defendants over forty (40), the risk of recidivism drops dramatically, lessening the need to protect the public from further crimes of the defendant under 18 U.S.C.A. §3553(a)(2)(C). In the United States Sentencing Commission report referred to above, the Commission noted that "recidivism rates decline relatively consistently as age increases from 35.5% under age 21 to 9.5% over age 50". Because of the defendant's anticipated rehabilitation, his expression of remorse, his clear acceptance of

responsibility and his age at release, it is unlikely that he will commit crimes upon his release from prison, and therefore a sentence of no more than 144 months is sufficient to achieve the goals of sentencing.

9. **The Kinds of Sentences Available**

Mr. Bruce is charged with a narcotics violation, which carries a mandatory minimum of 5 years imprisonment, and brandishing a weapon while engaged in this narcotic offense with a mandatory minimum of 7 years, which must run consecutive to the sentence, imposed for the narcotic offense. If the Court were to impose a non-Guidelines sentence he must be sentenced to at least 144 months or 12 years imprisonment – 5 years for the narcotic offense and 7 years for the weapons offense.

If the Court were to impose the minimum Guidelines sentence in Criminal History Category III he would receive a sentence of 192 months or 16 years imprisonment – 9 years for the narcotic offense and 7 years for the gun offense. If the Court were to impose a minimum Guidelines sentence in Criminal History Category IV he would receive a sentence of 205 months or 17 years imprisonment – 10 years for the narcotics offense and 7 years for the gun offense. If the Court were to impose a minimum Guidelines sentence in Criminal History Category V he would receive a sentence of 224 months or 18.6 years imprisonment – 11.6 years for the narcotic offense and 7 years for the gun offense.

**THE APPROPRIATE SENTENCE**

Section §3553(a) requires this Court to consider all the factors reviewed above and ultimately derive a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just

punishment, to afford adequate deterrence, to protect the public and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment.  These goals can easily be realized by sentencing him to a 12-year non-guidelines sentence. Any additional time is unnecessary.  Mr. Bruce has never served serious time in a prison before.  The most time he ever served was one year for a violation of probation.[2]  He is only 23 years old.  If he is sentence to 12 years imprisonment, hopefully, he will have outgrown the gang mentality.  Twelve years imprisonment will give him the opportunity to go to school, develop closer family relationships, and mature as an individual.  He will discover what is obvious to everyone around him, he is not a bad person, and he is just a person who was never given the opportunity to grow in a healthy way.

## THE GOALS OF SENTENCING – JUST PUNISHMENT, PUBLIC SAFETY AND DETERRENCE

Section §3553(a) also requires that this Court consider the purposes of sentencing, including punishment, promotion of public safety and deterrence. Under these standards, Mr. Stanley Bruce's sentence need not be longer than the mandatory 12-years required by law.

With this fact in mind, it is clear that all the goals of sentencing specified in 18 U.S.C. §3553(a) can be well satisfied in this case by imposing a term of imprisonment of no more than 60 months for the narcotic offense and 84 months for brandishing a weapon during a narcotic offense for a total of 144 months imprisonment.

## CONCLUSION

---

[2] The actual time served on a state sentence of 1 year is 8 months because local prisoners receive 10 days a month good time.

In the circumstances of this case, the goal of "just punishment" can best be satisfied by imposing a term of incarceration not to exceed 12 years. It is respectfully submitted that any term of incarceration greater than 12 years would constitute a sentence that is greater than necessary to meet the goals delineated in 18 U.S.C. §3553(a). Mr. Bruce also requests that the Court recommend to the Bureau of Prisons that he be designated to serve his sentence as close to New York City as possible so that he can continue to maintain family ties and have periodic visits with his fiancée and his immediate family.  Mr. Bruce would also appreciate a recommendation by the Court for placement in a drug treatment facility while in prison.

I hope that these observations are helpful to the Court in deciding how to fashion an appropriate sentence for Mr. Bruce.  In the past he has done an extraordinary job of hiding who he can be.  We hope that the Court can see past the rap sheet, can see past the indifference of the written word that tries to define who Stanley Bruce is. Hopefully, his intellect will guide him in the years to come and he will show his real face to the world and to himself.

                Respectfully submitted,

                Allan P. Haber
                Counsel for Stanley Bruce

APH: fms
cc: AUSA Andrew Bauer